# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**J & J Sports Productions, Inc.**                                                                             **PLAINTIFF**

vs.                                       **CIVIL ACTION NO: 3:10-cv-597-CWR-LRA**

**COTORRA COCINA MEXICANA & BAR LLC**
 c/o Hilario Bonilla                                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Default Judgment together with its supporting memorandum. [Docket Nos. 4 and 5]. Having considered the relevant pleadings, the Court finds that the motion should be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff J & J Sports Productions, Inc. ("J & J"), an international distributor of sports and entertainment programming, held the exhibition rights to broadcast the "Lethal Combination": *Manny Pacquiao v. David Diaz, WBC Championship Fight Program* [hereinafter "The Fight"]. The Fight was broadcast on June 28, 2008. J & J entered into sublicensing agreements with commercial entities throughout the United States and its territories authorizing the public exhibition rights to these sub licensees which included public establishments such as hotels, casinos, bars, and restaurants. The Fight was encrypted and made available only to Plaintiffs customers who paid closed-circuit license fees to exhibit The Fight.

Aundrea Trotter, one of J & J's investigators, observed the unlawful exhibition of The Fight at Defendant Cotorra Cocina Mexicana & Bar LLC (hereinafter "Cotorra Cocina"), which J & J accuses of having "unlawfully intercepted and intentionally exhibited the Program at Defendant's establishment for the purpose of direct or indirect commercial advantage" in violation of Section 605

of the Federal Communications Act of 1934 (Unauthorized Publication or Use of Communications), and 47 U.S.C. § 553 (Unauthorized Reception of Cable Services). [Docket. No. 5 at 2].

On October 22, 2010, J &J filed its Complaint [Docket No. 1] alleging violations of the above titled statutes as well as a common law claim of conversion. On December 7, 2011 Cotorra Cocina was served with a summons and a copy of the complaint, but it failed to appear or otherwise plead. On January 27, 2011, the Proof of Service was filed in this Court establishing that service was proper pursuant to Federal Rule of Civil Procedure 4(h). [Docket No. 3]. On February 17, 2011, Plaintiff filed its Application for Clerk's Entry of Default [Docket No. 6] and its Motion for Default Judgment [Docket No. 4] against Cotorra Cocina. The Clerk granted said entry on February 22, 2011.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure sets forth conditions upon which default may be entered against a party, as well as the procedure to seek the entry of default judgment. Fed. R.Civ. P. 55. "The Fifth Circuit requires a three-step process for securing a default judgment." *Chevron Intellectual Property, L.L.C. v. Mashiana,* 2011 WL 2637372 (E.D. Tex. 2011) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)). "First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure." *Id*. (citing Fed. R. Civ. P. 55(a); *New York Life Ins*., 84 F.3d at 141). "Next, an entry of default may be entered by the clerk when the default is established by affidavit." *Id.* (citing Fed. R. Civ. P. 55(a); *New York Life Ins*., 84 F.3d at 141). "Third, a plaintiff may then apply to the clerk or the court for a default judgment after an entry of default." *Id*. (citing Fed. R. Civ. P. 55(b)).

Because Cotorra Cocina has failed to timely appear, answer, or otherwise plead in the instant litigation, the well-pleaded allegations in the Complaint are taken as admitted. *CENTRIA v. Alply Architectural Bldg. Systems, LLC*, 2012 WL 73235, *4 (S. D. Miss. Jan. 10, 2012)(citing *Hennis v. Trustmark Bank*, 2010 WL 3122644, *3 (S.D. Miss. Aug. 4, 2010)). With respect to the amount of damages, however, the court must ensure that any amount awarded is reasonable and demonstrated by evidence. Fed. R.Civ. P. 55(b)(2)(C).

Relying on these admitted facts, J & J requests damages pursuant to the Federal Communications Act of 1934 which, at the discretion of the plaintiff, provides for either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Under this provision of the statute, an aggrieved party may recover "a sum of not less than $1,000.00 or more than $10,000.00, *as the Court considers just* for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). The Court is authorized to enhance the amount of damages up to $100,000.00 for each violation where it finds that the violation was willful and for the purpose of "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The Court is also empowered to award the aggrieved party its full costs, including attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii).

Here, J & J seeks only statutory damages as it makes no attempt to establish actual damages. As evidence relating to damages, J & J presents the uncontroverted affidavit of investigator Aundrea Trotter who claims that Cottora Cocina unlawfully broadcasted The Fight on one large screen television and two smaller televisions. According to Trotter, the total number of patrons varied at 2, 6, and 8 throughout the evening. [Ex. A at 2]. [1]

---

[1] Trotter's affidavit avers that Cottora's Cocina's seating capacity was only 8, but in J & J's supporting memorandum, it states that the maximum seating capacity was 50. [Docket No. 5 at 7]. It is likely that Trotter has erred in her affidavit. A restaurant or bar open to the public is not likely to have a maximum seating capacity in the single digits. Assuming the capacity was 50, "the commercial sublicense fee would have been $1,200."Affidavit of Joseph M Gagliardi, the President of J & J, submitted in support of the Motion for Default Judgment [Docket No. 4-

3

Although J & J has presented arguments regarding violations in support of awarding damages under Sections 553 and 605, "as its first basis for relief [J & J] requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)." Memorandum in Support of Motion for Default Judgment [Docket No. 5], at 7.[2] With this evidence in conjunction with certain case law, J & J argues for, *inter alia*, an award no less than $1,000.00 nor more than $10,000.00 for each violation under this provision. *Id*.

The Court finds that liability should be imposed only under § 605, which provides for greater damages than § 553, and any damages awarded under § 605 are sufficient. See *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993), *affirmed after remand*, 75 F.3d 123 (2d Cir.), *cert. denied* 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996). *Accord. J & J Sports Productions v. Sorondo*, 2011 WL 3917391, *4 (E.D. Cal. Sept. 6, 2011). As previously mentioned, under that section, an aggrieved party may recover "a sum of not less than $1,000.00 or more than $10,000.00, as the Court considers just" for each violation. 47 U.S.C. § 605 (e)(3)(C)(i)(II).

Without question, J & J is an aggrieved party under § 605. The primary issue that the Court faces involves determining what award of damages is just. Again, J & J avoids specifying an amount. [Docket No. 5] at 20. *See also id*. at 7-17 (arguing for maximum in statutory damages plus enhanced damages); and 17-18 (arguing against nominal damages) Although J & J has pointed to authorities which indicate that substantial damages should be awarded, *see, e.g., J & J Sports*

---

2], at ¶ 8.

[2] Here, although Plaintiff alleges violations of both § 553 and § 605, the Fifth Circuit has yet to address whether recovery under both sections for the same action is permissible. *J & J Sports Productions, Inc. v. Live Oak County Post No*. 6119, 2009 WL 548157, at *4 n.3 (S.D. Tex. Feb. 24, 2009) (citing *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001))(speaking to the disagreement on the issue of double recovery and citing *United States v. Morris*, 88 F.3d 462, 466 (7th Cir. 1996) which suggests that a plaintiff may not recover under both sections). We need not decide this issue.

4

*Productions, Inc. v. Lopez*, 2008 WL 2915109, *4 (E.D. Cal. 2008)(recommendation of award of $30,000 for damages); *Joe Hand Promotions, Inc. v. Haddock*, 2009 WL 2136117 (E.D. Cal. 2009)(awarding $50,000 in damages); and *Kingvision Pay-Per-View, Ltd. v. Dosani*, 2006 WL 3316988, *2 (S.D. Tex. 2006)(awarding $25,000 in enhanced damages in addition to the $10,000 maximum statutory damages), the Court finds the *Sorondo* case particularly instructive. There the court explained:

> The mere assertion that the defendant acted willfully is insufficient to justify enhanced damages . . .To establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks. The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired. . . Awards should be proportional to the violation. . . . Higher statutory awards are indicated for repeat offenders . . .
>
> * * *
>
> Awarding the statutory maximum is inappropriate in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight. . .

2011 WL 3917391, at *4-5 (quotations and citations omitted). Other courts are in agreement. *See J & J Sports Productions*, Inc., 2012 WL 913743 (E.D. Cal. March 16, 2012)( For similarly sized establishments, absent evidence of commercial advantage or financial gain, district courts have awarded the statutory minimum where the defendants were first-time offenders); *Garden City Boxing Club v. Zavala*, 2008 WL 3875272 (N.D. Cal. Aug. 18, 2008)(traditional method of determining statutory damage is to estimate either the loss incurred by the plaintiff or the profits made by the defendants and where the apparent financial benefit to the defendants does not exceed $1,000.00 it

5

is common to award statutory minimum); and *Garden City Boxing Club v. Lan Thu Tran*, 2006 WL 2691431 (N.D. Cal. 2006)(where broadcast made to small audience and there is little to no evidence of defendant's financial gain, courts typically award statutory minimum).

With respect to damages pursuant to 47 U.S.C. § 605 (e)(3)(C)(i)(II), there is nothing about the facts of this case that supports an award beyond the statutory minimum. There is no evidence that Cotorra Cocina either advertised or promoted the broadcast in an attempt to increase its patronage. It did not charge a cover charge. There is no evidence that the restaurant intended to directly profit from the violation or that it made any profits from the violation. The fact that no more than eight patrons were in the restaurant suggests strongly that there was no profit to be made. Moreover, there is no evidence that Cotorra Cocina was a repeat offender. Consequently, pursuant to 47 U.S.C. § 605 (e)(3)(C)(i)(II), $1,000.00 is just.

Now, the Court turns to the issue of willfulness. If the Court determines that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase the award of damages by up to $100,000.00 for each violation. 47 U.S.C. § 605 (e)(3)(C)(ii). Evidence relating to enhance damages includes the fact that the transmission was obtained without paying a licensing fee. In addition, the broadcast could "*not and cannot be mistakenly, innocently or accidentally intercepted.*" Affidavit of Joseph Gagliardi, at ¶ 9 (emphasis in original). In other words, one had to purposefully take steps to intercept the signal. In order to deter future willful violations of this defendant and for others who choose to cross the line, the Court finds that an enhancement of $500.00 is appropriate in this case as well. See *Zavala*, *supra*, at *1, (enhancement damages in the amount of $5,000)(citing *Joe Hand Productions, Inc. v. Pete*, 1999 WL 638215, at *2 (N.D. Cal. August 17, 1999)). *See also Dosani*, *supra*, at *2.

6

(enhancement damages in the amount of $5,000); *Kingvision Pay-Per-View v. Guzman*, 2009 WL 1475722 (N.D. Cal. May 27, 2009)(enhancement damages of $2,000); and *J & J Sports Productions, Inc. v. Cardoze*, 2010 WL 2757106 (N.D. Cal. July 9, 2010)(enhanced damages of $250).

As for Plaintiff's request for conversion damages, the Court finds it appropriate to grant such. In Mississippi, ownership is a necessary element of conversion and "there must be proof of a wrongful possession, or the exercise of dominion in exclusion or defiance of the owner's right , or of an unauthorized and injurious use, or of a wrongful detention after demand". *Middleton v. Ameriquest Mortg. Co.*, 2010 WL 2653293, *3 (S.D. Miss. 2010) (quoting *Bank of Ellisville, Miss. v. Courtney*, 884 So.2d 767, 772-73. (Miss. 2004)). Because the normal charge for an establishment in Defendant's position was $1,200.00, and Defendant failed to pay, the Court grants Plantiff's request in this regard.

Finally, as the prevailing party, J & J is entitled to an award of its costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii). In this regard, the undersigned finds that the costs and attorney's fees of $3,295.00 reasonable based upon the declaration and affidavits of counsel. [Docket Nos. 4-3 and 4-4].

CONCLUSION

In short, the Court awards $1,000.00 pursuant to 47 U.S.C. § 605 (e)(3)(C)(i)(II), $500.00 pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii) as enhanced damages, $1,200.00 for conversion, and $3,295.00 for costs and attorney's fees.

SO ORDERED and ADJUDGED this the 29th day of March, 2012.